We have just decided to address the pending motions for judicial notice that were raised in the April 7, 2017 letter. We are granting a plaintiff's request for judicial notice, otherwise denying a ... I'm sorry, do you have it? It's in your phone. It's in your phone. Sorry. All right. So, we have filed a letter in 2010 that's granted, but otherwise a trustee motion is denied. And with regard to the re-filed motion to remove erroneously named individuals from the docket, or in the alternative, dismiss the erroneously named and outgoing individuals from appeal, is there any objection to re-formulating these captioned, dual-named individuals? There are no objections. Okay. All right. And can we work together in order to do that? Before I begin, I'd like just to be clear. So, the request for judicial notice of the Department of Education, the administrative findings, the issue of parent prosecution, language standards enforcement, all that stuff. Yes. Because we don't want it. That was not before the district court. It has logically occurred subsequently to the district court's order. And it's not a fair game for the group. And may I interrupt on that as well? Unless you want to use up all of your time, I'm sorry. You're making an introduction. Go ahead. Not all of my time. May it please the Court. I guess before I begin, I do want to say something on that. Those conditions of language standards enforcement, as it matters, were before the district court. They were a part of the record below. So, that's not correct. They were at, in their social record, 245-246, 241-243, 248-249, 865-3868. The amicus brief was in 251-288. The DOL fact sheet was also before the court below. The only things that were out before the court below were administrative findings, which are a proper subject of judicial notice under numerous cases talking about official information posted on government websites, and in certain cases talking about reports of administrative bodies going back to the 1970s. Yeah, I understand that. But the district court dealt with all of that. It's not going to change. It's not going to change. It should have been considered the residue certainly before it. Fundamentally, this is a case about a for-profit cosmetology school, Maranello, that did not provide students training on the functional areas needed for them to get jobs in their desired fields. Rather, while Maranello had students enrolled, it usually is an integral part of describing a new generation model to operating low-cost salons. As the president of the company articulated and prioritized profits over education and return. And here today, the 9th Circuit has an opportunity to collaborate the FLSA's standard of employment regarding vocational students when they are put to work at a supposed school for immediate benefit of a for-profit education company. And following the Wally v. Portland Journal, which all parties agree is a determinative authority here, the court should hold that the FLSA prevents students from being taken advantage of as an unpaid laborer. And specifically, the fact that the state requires a significant amount of training, in order to sit for the cosmetology degree, and that unlicensed cosmetologists are otherwise not permitted to practice cosmetology, because they are unlicensed. We don't take issue with the fact that they need to do clinical work, obviously. The question is, how are they actually being put to use during that clinical time? Are they being put to use, as the facts show here, to generate revenues for the defendants? Are they being put to do services based on customer preference and customer need, rather than educational need? Are they being put to work selling shampoo and other products to generate profits for the company? Are they being put to work doing janitorial work? Are they being put to work doing receptionist and clerical duties? Is there a need for training for their required education in cosmetology? There are. I think that's a specious sort of argument. The reason is because, yes, sanitation is tested on the cosmetology exam. Being put to work doing endless hours of laundry, sweeping, cleaning mirrors, cleaning sinks, that is not sanitation training for a cosmetologist. These folks who are coming in and certainly didn't need to pay $20,000 to go home. The test underwalling is what? The test underwalling is whether there's an immediate advantage to the alleged employer. Here, their clue was, to be honest, that there was an immediate advantage. The so-called, what you call, employees here are in a school. At the end of the school, they received a certificate that entitles them to practice cosmetology in the city of Nevada and California. Is that right? Without that certificate, it wouldn't be an employee. A certificate. So the question is, does that give license to this corporation without limits to utilize these people as an unpaid labor force to generate profits? What you're arguing is that they're getting no benefit out of this. And they wind up qualified to practice a profession. And they are required to do at least a portion of the work that they're required to do. Your Honor, I'm not saying they get no benefit out of it. Although, you think, of course, you're taking additional notice of the Department of Education letters,  however, there's higher factors, evidence of record that they got no benefit out of it since. Out of what? Out of going there at all and spending all this money doing D.P. and debt because they weren't trained adequately on skills such that several of the main plaintiffs were not ever able to even practice in this profession. They wound up going back to the servers at restaurants since they had been before they incurred this massive debt. But, Your Honor, even if we assume, yes, they got D.P. benefit out of it, getting D.P. benefit out of it is not the test. Or, as the Latin Second Circuit case calls it, an appreciable benefit. That's not the test either. The test is whether the company received immediate benefit from the work that they were doing. And in Wally, you had these railroad trainees who, where the company was receiving no immediate benefit from their work. In fact, they were D.P.ing and retarding the work of the company, which is people constantly supervising these employees. That's the opposite of the situation that we have here. What we have here is, for example, as one of the declarants testified, 25 to 40 percent of the time there was no instructor at all in the salon. Another declarant testified he went nine months with no instructor whatsoever. That when they give you any feedback. They're talking about when they're doing these. When they're in the salon. Yes. Time doing customers. Yes. Time doing services for the company's profit. That half the time, or they all testified with fairly, with a lot of specificity, about the fact that there was frequently no supervisor at all, even when there was a supervisor. That they would get no actual feedback. That a lot of times all they would do is report what services they hadn't completed. And the company's witnesses did not dispute this lack of supervision. They disputed it in the sense that they said, if ever there was supervision at the required level of the state, what that meant was you needed to have one instructor. If there were 25 students anywhere on campus, the instructor could have been in the classroom, while people on the salon floor had no supervision of any kind. That's in the record. In multiple places, in Excellence of Record 946, in Excellence of Record 968 through 98, 986 through 99, the 386th opponent, acknowledged that the education program is not set up to have one-to-one continual contact with students. That's the kind of supervision, Your Honors, that is required at a vocational school if they're going to be putting people to work, because at that point, as in Walling, they're not providing a bed, as in they're actually trained on operations. Here, that's not what we see. They're not getting that kind of supervision. And they're doing... Here's what's troubling me. This is a highly regulated profession. They have to be qualified to do business by the state. If the school is not operating properly, this would appear to be something that the state regulation should take care of. I have a little trouble seeing why if the school isn't doing a very good job, we should say that these people are actually employees under the FWC? Right, well, this is... Okay, there are the state regulations governed, first of all, as you know, again, in the Department of Education letters, they're no longer operating because their ability to collect student loan money or student resource money was pulled because they weren't operating in a lawful manner. But those state regulations, the cosmetology regulations, do not decide the issue of who's an employee or not. They're not looking at that, in a sense. They're not looking at, for example, California. According to that letter, it basically said that, you know, that's what Judge Brewer just stated, that the real benefit here was to the students because they needed the hours and they couldn't get a place easy without serving in some capacity to get this kind of experience. Your Honor, the District Court erred on a number of levels. The District Court threw out a lot of our core evidence erroneously by requiring, as a part of Rule 26 disclosure, that we disclose to the defendant in opposing summary judgment each named class member that we might use in opposing summary judgment. What was the big burden about providing three names and addresses of plaintiffs that, you know, are going to obtain declarations from this court? That's not the standard, Your Honor. What is the burden? There's a tremendous burden. Don't tell me what the standard is. Tell me how you were burdened. I was burdened, Your Honor. By complying with the rule. It's not complying with the rule. There's no such thing. And it does comply with the rule in Rule 26. Yes, Your Honor, I have. In Rule 26, there are numerous cases... Why did you do that? Because that is not required under Rule 26. There's numerous District Court decisions which have held that under Rule 26, in a class case, you don't have to disclose that to the defendant. The names of your class members. My response was, it's every member of the class, and this cumulative class is how many hundreds to thousands of people. You can look at the employment that the defendant has against, which ones are like that? Not so, Your Honor. When is this an issue? And the declarants, in particular, went to the same schools at the same time as the plaintiffs. The list was quite small. It was under 100 people at this point. I'm asking you a question. I'm asking you a question. Your Honor, I'm just looking for the product. Absolutely. I'm looking for the identity of what is the year called. I read your disclosure. It's not me. It's not the judge. You're saying that you're just saying that it's you. I'm just investigating. Are there current and former student employees in the Rubble Schools in Newport? Yes, sir. I'm just wondering. I don't see it because they couldn't come with an indefinition in our district or school. We may have seen this time. Okay. We meet one or three clients explicitly in our several responses, not in the real-time statistics. Your Honor, what I'm saying is that the reason these people were brought here was because lawyers can go off and look at anybody in the country that was never a former student of the Rubble School, argue with the ones you say they should contact. You have their contact information, and it's valid. You say what kind of information they have and that's part of your disclosure. But if you just categorically say everybody that's a former or current student of the Rubble School of Beauty, and they're 1-1, our courts don't feel anything for it. And so it seems to me that you have a burden if you want to keep going to narrow that to some extent, as opposed to just say, I've got work problems, and I'm going to tell you any of those people what they know or their addresses or their names. You have to find it yourself, and it's something that's a surprise when we end up on a lawsuit. Your Honor, in our briefing we discussed the Campbell v. Best Buy case. I'm talking about this case. If I was a third story, if I was a district judge just like this judge, it would be ridiculous to say you can say all current and former employees and not pick any more specific. I don't know what that would do. I would learn more specifically, Your Honor, because there's quite a few people, all the people that they actually know. Our plane is actually new. When this case includes one of the declarants, another declarant, my first name only. That was in response to the interrogatory, Your Honor, and so they had this information. So if Your Honors are not persuaded that in a class action it is not our responsibility before imposing summary judgment to tell a defendant each class member we plan to use to impose a summary judgment motion, then I would ask you to look, Your Honor, at Rule 37, Your Honors, because the question here in striking our core evidence should be what surprise were the defendants surprised that they were using class members who went to school at the same time in the same locations as the plaintiffs? But more to the point, how were they threatened? Why couldn't they, under Rule 50, 6D, ask for the opportunity to impose on those people and so it prejudices us for the imbalancing? Your Honor, I would say that there's an opportunity to be struck that the disposer came to blame in the process and that you were not diligent in conducting the discovery earlier in the case and that it was not a willingness of the defendants to file a request to remove all of the names because the district court had a retrial schedule set and it came too late. And that you had no good cause, why you couldn't have made the disclosure earlier. How is that an abuse of discretion? Absolutely, it would be an abuse of discretion, Your Honor, for the same reason that this court just found in the Solid 21 v. Hudlock case, 685, 530, because when you have evidence that goes to the heart of the plaintiff's case where you're excluding declarations and putting a substantial hurdle in our way of trying to impose a summary judgment where, on the other hand, all the defendants would have had to do if they really needed that testimony and had been unable to get it, which we dispute, is to say under Rule 50, 6D, we need to depose those people. And it doesn't push, there's no trial that's, you know, two weeks away and we don't have a jury sitting against us. I know this hearing kind of offended you to that date for filing a motion, is that true? It said we had stipulated motion filing back and forth dates early because we wanted to get to the core legal issue early. But if they wanted more depositions, they felt they needed them, they certainly could have asked for them and did it. And it helped me. Yes, sir. Good morning.  Good morning. I hear others. In respect to the solemn day and, you know, the reason we're sitting here today, and to those of you who don't think there's a reason why we're sitting here today, you know, being too dramatic in discussing the issue before the court today, if you take the insurance argument to its logical conclusion, it would be that two of all locations would be needed because they couldn't operate. And as it is agreed, we start with Portland Terminal. And Portland Terminal is both the place to start and, interestingly, it's the place to end because Portland Terminal, they carved out an exception for location space right in the beginning. It said at a grainy break in taking courses in railroading at a locational school, it could not be reasonably suggested that there were employees at the school within the meaning of the act. We have to look at this in the educational context. They understood, they were prescient enough to recognize that in the educational context, this is completely different when you're talking about students. And my client is a locational student. He's teaching students to become practicing cosmetologists. Part of that training and part of the curriculum is that they have to operate in a clinic environment. That clinic environment includes sweeping, emptying trash cans, cleaning sinks, sanitizing equipment, but that's all required on the exam for which they receive certification to operate as a licensed cosmetologist. It's required by the state. We need to have this driving for the training. Thank you. Can I ask a question? Sure. With respect to these declarations that were stacked up, if we were to say that the district court said that the district employees found anything critical in those declarations, that would make the case? Absolutely not. They're incorrect. This is a class action. It's limited to these three specific plaintiffs. Their experience is what is important here. And the fact is, if you read the declarations, you turn in the record, all they do is shadow the declarations that were submitted by the plaintiffs. In the underlying case, if you look at district court, they added nothing to the report. Absolutely nothing. Before you even said all those subtle detail, which included, albeit not a lot of detail, about efforts by the school to support and make the educational function of the clinics as the goal of making money, it wasn't sufficient. Even if you consider these declarations, it would not change the outcome of the ruling by the district court, which is what it is. Are there any of these cases pending at the state court? What do you mean, pending? Well, you just said, interestingly, what just happened, and we have the Second Circuit in Clarendon, and we have the Eleventh Circuit in Shipman, who have ruled that, well, not constitutional standards, but that internal training interns in a practical training program do not be considered employees of the medical facility. But we have even better case that just came down in Collins, which was submitted to the court as supplemental authority, and that involved cosmetology students. It was specifically decided that, based on following the plan and following the procedure, that the economic reality of the relationship between the students working in a clinic, exactly the same thing that we have here, was clearly a situation where the student was a primary beneficiary of their relationship. And that was sufficient, exactly, today. And that was the Seventh Circuit? That was the Seventh Circuit. I'm sorry, my question was, are there any cases pending in California that are at a state court? Is that where you're on this issue? I would, if you are on that. Because there are state law claims. I understand that. And these cases are on the principal injunctive, I want to say. Correct. I can't address the state law issue as you'd like me to. I don't believe it's necessary, Your Honor. I don't think Martinez is really applicable in this situation. That was an employer-independent contractor situation. It's completely different than what we have here, where you have the student in a school. Determining whether someone is an employee or an independent contractor, they relied on the control test. And in a student school environment, there's always control. There's always control over the student, but that doesn't turn them into an employer. And that's why I don't think Martinez is applicable. I don't think in Martinez, that would suggest that the California Supreme Court would come out and indicate that. I don't think it's at all. As of the district, is it? Yes, it is completely distinguishable if you're in the district court when it's okay, it's actually to distinguish it. And they made the point that it makes no sense to extend the employee-independent contractor test to the educational content. Schools typically exercise significant control over their students, but that doesn't mean schools are typically employers of its students. That's the analysis that has to be made, and that's why Martinez doesn't apply. That's why I don't think it's an issue which is critical to the court's determination. If the court would like me to address the Rule 26 disclosure, I don't think I don't have anything more to add to that. Thank you. We'll wait for some questions. Thank you. Your Honor, first of all, the California law issue, the district court and counsel just now erred in the argument calling Martinez a case about employee versus independent contractor. It's not a case about independent contractor at all. I think if, obviously, you want a total reversal, if it doesn't seem like you're going that way, then I think that question should be certified, because the court has applied California law, finding that it comes from federal law, where it's used to see who is the employee.  Right. Well, it sets the standard of who is an employer in California, and this new case that we just provided, as you chose, the California Guild of Appeal, it's using Martinez to determine whether trainees are employees. Martinez did not have to do with trainees. It had to do with who is an employer. Right. And it has been advertised for. It is the authority in defining who is an employer in California, and the test includes not only control, but sufferal permit to work, and here these people were suffered and permitted to do extensive work, for the profit of Maranella. I note also on California law, that the DLSC opinion letter that you did allow, does not pursue, as the court decided to do, a primary beneficiary analysis of your class. It adopts the Department of Labor's six-part test, and follows it assiduously, including going through who's, whether the employer, alleged employer, is an immediate beneficiary, the level of supervision that the people received, those same factors that we're asking people to look at. So even if you only look at that one letter, it supports our claims here. Thank you very much. Those cases are here to submit.
judges: Schroeder, Tallman, Whaley